UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ANTHONY G. BELL, #16001767,

                    Plaintiff,

          -against-

NASSAU INTERIM FINANCE AUTHORITY,
THE STATE OF NEW YORK,

                    Defendants.
----------------------------------------------------------------X

For Online Publication Only

**ORDER**
16-CV-5447(JMA)(AYS)

**AZRACK, United States District Judge:**

The instant complaint is one of many *in forma pauperis* complaints that *pro se* plaintiff Anthony G. Bell ("Plaintiff") has filed with this Court.[1] All of his prior complaints have been dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B). The present complaint against the Nassau Interim Finance Authority ("NIFA") and the State of New York ("NYS") is brought pursuant to 42 U.S.C. § 1983 ("Section 1983"), and purports to allege a deprivation of Plaintiff's constitutional rights. For the reasons that follow, the Court grants Plaintiff's request to proceed *in forma pauperis* and *sua sponte* dismisses the complaint claims pursuant to 28 U.S.C. § 1915(e)(2)(B).

**I. BACKGROUND**

All material allegations in the complaint are assumed to be true for the purpose of this Order. See, e.g., Rogers v. City of Troy, New York, 148 F.3d 52, 58 (2d Cir. 1998) (in reviewing a pro se complaint for *sua sponte* dismissal, a court is required to accept the material allegations

---

[1] See, e.g., 16-CV-2687(JMA)(AYS) Bell v. Cnty. of Nassau, et al.; 16-CV-2688(JMA)(AYS) Bell v. City of Long Beach, LI, NY; 16-CV-2959(JMA)(AYS) Bell v. Sposato, et al.; 16-CV-3385(JMA)(AYS) Bell v. Bogle; 16-CV-3664(JMA)(AYS) Bell v. State of New York; 16-CV-3665(JMA)(AYS) Bell v. Armor Corr. Health, Inc., et al.; 16-CV-3931(JMA)(AYS) Bell v. New York State Comm. of Corr.et al.; 16-CV-4683(JMA)(AYS) Bell v. Nassau Cnty., et al.; 16-CV-4639(JMA)(AYS) Bell v. Armor Corr. Health Inc., et al.

in the complaint as true).

Plaintiff is no stranger to this Court. Since May 25, 2016, plaintiff has filed more than ten *in forma pauperis* complaints. Plaintiff's sparse allegations appear to challenge the conditions of his confinement during his incarceration at the Nassau County Correctional Center. The "Statement of Claim" alleges, in its entirety:[3]

> (NIFA) They control Nassau's finances since 2011 and have approved all of Armors contracts with Nassau County and the knew that Armor was being sued for negligent care in jails across the country. Mangano the County Executive knew it but they renewed the 2011 contract in 2013 anyway for two more years. NIFA also knew of the complaints and did not care about inmates health or well being. All they cared about was saving a few dollars. Also New York State is the oversight board responsbile for approving Nassau's financial dealings and contracts and over the years have done nothing. New York state failed to keep this from getting worse.

(Compl. ¶ IV.) In the space on the form complaint that calls for a description of any claimed injuries and any medical treatment that was required and/or provided, Plaintiff alleges:

> Poor medical treatment. I have HIV and was denied Atripla which I have been taking for almost 4 ½ years and pysch meds. Also my asthma medication. Armor would not get my C PAP machine fixed in almost 6 months where in I suffered nose bleed all day and night. Also I did not get the proper rest which led to more depression and anxiety as well mood swings."

(Id. ¶ IV.A.) Plaintiff's current complaint does not identify when this "poor medical treatment occurred," but his numerous other filings make clear that he was subject to this allegedly inadequate medical treatment during his incarceration at the Nassau County Correction Center in 2016. See, e.g., Nov. 22, 2016 Order, Bell v. The City of Long Beach, 16-CV-2688(JMA)(AYS) (recounting Plaintiff's allegations that "Nassau County against Armour Health and Nassau County

---

[3] Excerpts from the complaint are reproduced here exactly as they appear in the original. Errors in spelling, punctuation, and grammar have not been corrected or noted.

Correction for medical neglect and housing in unsanitary conditions from Feb 16, 2016 till present . . . .").

## II.  DISCUSSION

### A.  *In Forma Pauperis* Application

Upon review of Plaintiff's declarations in support of the application to proceed *in forma pauperis*, the Court finds that Plaintiff is qualified to commence this action without prepayment of the filing fees. 28 U.S.C. § 1915(a)(1). Therefore, Plaintiff's application to proceed *in forma pauperis* is granted.

### B.  **Standard of Review**

The Prison Litigation Reform Act requires a district court to screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint, or any portion of the complaint, if the complaint is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). Similarly, pursuant to the *in forma pauperis* statute, a court must dismiss an action if it determines that it "(i) is frivolous or malicious, (ii) fails to state a claim upon which relief may be granted, or (iii) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). The Court must dismiss the action as soon as it makes such a determination. 28 U.S.C. § 1915A(b).

*Pro se* submissions are afforded wide interpretational latitude and should be held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); see also Boddie v. Schnieder, 105 F.3d 857, 860 (2d Cir. 1997). In addition, courts are required to read a plaintiff's *pro se* complaint liberally and interpret it as raising the strongest arguments it suggests. United States v. Akinrosotu, 637 F.3d 165, 167 (2d Cir. 2011) (per curiam) (citation omitted); Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

*Pro se* plaintiffs, however, must still plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678. While "'detailed factual allegations'" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. at 678 (quoting Twombly, 550 U.S. at 555).

**C.      Section 1983**

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979); Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999). In order to state a Section 1983 claim, a plaintiff must allege two essential elements. First, the conduct challenged must have been "committed by a person acting under color of state law." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (quoting Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994)). Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." Id.; see also Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999). In

4

addition, in order to state a claim for relief under Section 1983 against an individual defendant, a plaintiff must allege the personal involvement of the defendant in the alleged constitutional deprivation. Farid v. Elle, 593 F.3d 233, 249 (2d Cir. 2010).

### 1. Plaintiff's Section 1983 Claims Are Barred by Sovereign Immunity

In interpreting the Eleventh Amendment, the Supreme Court has consistently held that "nonconsenting states may not be sued by private individuals in federal court." Bd. of Trustees v. Garret, 531 U.S. 356, 363 (2001). This immunity extends to the state agencies and departments. Papasan v. Allain, 478 U.S. 265, 276 (1986) (citing Pennhurst State School and Hosp. v. Halderman, 465 U.S. 89, 100 (1984)). Congress has not abrogated Eleventh Amendment immunity for claims under Section 1983, nor has New York waived immunity for such claims. See, e.g., Sherman v. Harris, No. 11-CV-4385, 2012 WL 4369766, at *5 (E.D.N.Y. Sept. 24, 2012). Accordingly, Plaintiff's claims for monetary damages against NYS are barred by the Eleventh Amendment.

NIFA is a public benefit corporation created by the State of New York in June 2000 in response to the growing financial crisis facing Nassau County. N.Y. Pub. Auth. Law § 3650 et seq. The NYS Legislature passed the NIFA Act, creating NIFA as a "corporate governmental agency and instrumentality of the state constituting a public benefit corporation." See N.Y. Pub. Auth. Law § 3652(1); see also Carver v. NCIFA, 730 F.3d 150, 153 (2d Cir. 2013). NIFA is "administered by seven directors appointed by the governor." See N.Y. Pub. Auth. Law § 3653(1).

The Court finds that NIFA is likely entitled to sovereign immunity, which precludes Plaintiff's Section 1983 claim against NIFA. See Carver v. Nassau Cty. Interim Fin. Auth., 730 F.3d 150, 156 (2d Cir. 2013) (indicating, without deciding, that the question of whether NIFA is entitled to sovereign immunity was "an arguably close question"); see also Brief for Defendants-

5

Appellants, Carver v. Nassau Cty., Nos. 13-CV-0801, 13-CV-0840, 2013 WL 1623592 (2d Cir. Apr. 3, 2013) (explaining why NIFA is entitled to sovereign immunity); Reply Brief for Defendant-Appellants, Carver v. Nassau Cty., Nos. 13-CV-0801, 13-CV-0840, 2013 WL 2364620 (2d Cir. May 22, 2013) (same). In any event, even if NIFA is not entitled to sovereign immunity, Plaintiff's claims against NIFA also fail for the two additional reasons set forth below.

**2. Plaintiff Fails to Allege a Plausible <u>Monell</u> Claim Against NIFA**

It is well-established that municipalities may only be held liable under Section 1983 if the plaintiff proves that "action pursuant to official municipal policy of some nature caused a constitutional tort." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978). Even if NIFA were not entitled to sovereign immunity, Plaintiff would have to plausibly allege that some official policy or custom of NIFA caused the underlying constitutional tort at issue. Here, the underlying constitutional tort is a deliberate indifference claim stemming from the allegedly poor medical treatment that Plaintiff received from Armour Correctional Health, Inc. ("Armour") while he was incarcerated at the Nassau County Correctional Facility in 2016. As explained below, Plaintiff has not plausibly alleged that any action by NIFA caused his alleged constitutional injury.

Plaintiff alleges that NIFA is responsible for Armour's misconduct because: (1) NIFA knew that Armour was being sued for negligent care in jails across the country; and (2) despite that knowledge, NIFA, which controls Nassau County's finances, still "renewed the 2011 contract [between Armour and the County] in 2013 for two more years." (Compl. at 4.) This argument is flawed because Plaintiff was incarcerated in 2016 and all of the misconduct by Armour that allegedly injured Plaintiff occurred in 2016. Plaintiff, however, only alleges that NIFA approved a two-year renewal of Armour's contract in 2013 and does not allege that NIFA approved the Armour contract that was in place in 2016 when Plaintiff was allegedly subject to mistreatment.

6

Thus, even assuming that NIFA's approval of a Nassau County contract could constitute an actionable policy decision under Monell, Plaintiff has not plausibly alleged that NIFA's approval of the two-year renewal of Armour's contract with Nassau County in 2013 caused the alleged underlying constitutional violation here, which occurred in 2016.[6] Accordingly, Plaintiff has failed to state a plausible claim against NIFA.

### 3. *Res Judicata* Precludes Plaintiff's *In Forma Pauperis* Suit Against Both NIFA and NYS

Prior to filing the present suit against NIFA and NYS, Plaintiff filed numerous other *in forma pauperis* suits against different defendants, including Nassau County, Armour, NYS, and various individuals employed by Nassau County and Armour, premised on the same alleged failure to provide proper medical treatment during Plaintiff's incarceration in 2016. See, e.g., Nov. 22, 2016 Order, Bell v. The City of Long Beach, 16-CV-2688 (JMA)(AYS) (suing Nassau County); Nov. 22, 2016 Order, Bell v. County of Nassau, 16-CV-2687 (JMA)(AYS) (suing Nassau County and Armour); Nov. 22, 2016 Order, Bell v. Sposato, 16-CV-2959 (JMA)(AYS) (suing the Nassau County Sheriff and the Nassau County Executive); Nov. 22, 2016 Order, Bell v. State of New York, 16-CV-3664 (JMA) (AYS) (suing New York State). All of these suits were dismissed for pursuant to 28 U.S.C. § 1915(e)(2)(B).

Prior dismissals under § 1915(e) have *res judicata* effect on frivolousness determinations for subsequent *in forma pauperis* applications. Cieszkowska v. Gray Line New York, 295 F.3d 204, 205 (2d Cir. 2002). Under the doctrine of *res judicata* (which is also known as claim preclusion), "'once a final judgment has been entered on the merits of a case, that judgment will

---

[6] Any Monell claim against NIFA would also fail because Plaintiff has not alleged when NIFA learned that Armour was being sued for negligent care in jails "across the country." Moreover, the mere fact that an unspecified number of negligence suits were filed against Armour would not be sufficient to plausibly allege that NIFA was deliberately indifferent to constitutional violations at the Nassau County Correctional Facility.

bar any subsequent litigation by the same parties or those in privity with them concerning the transaction, or series of connected transactions, out of which the [first] action arose.'" Id. (quoting Maharaj v. Bankamerica Corp., 128 F.3d 94, 97 (2d Cir. 1997)). Even if the defendants in the two actions are different, *res judicata* still applies if the defendants in the two actions are in privity with each other. See Shockley v. Hosterman, 279 F. App'x 98, 99 (3d Cir. 2008) (finding *res judicata* required dismissal of second *in forma pauperis* suit pursuant to 28 U.S.C. § 1915 and explaining that the plaintiff's "attempt to add John Doe Prison Officials to the other defendants he named before" in earlier suit that was dismissed pursuant to 28 U.S.C. § 1915 did negate preclusive effect of the prior dismissal because the defendants were "are all prison officials in privity with one another"); Clissuras v. E.E.O.C., No. 89-CV-5869, 1990 WL 209415, at *1 (S.D.N.Y. Dec. 10, 1990) ("Government agencies are in privity where, as here, a party loses an action with a government agency and then seeks to relitigate the same issues with a second, related government agency.").

*Res judicata* precludes the instant *in forma pauperis* suit against NYS because NYS was previously named as a defendant in one of Plaintiff's prior *in forma pauperis* suits that was dismissed.

Although NIFA was not previously named as a defendant in any of the prior suits, because NIFA was in privity with other defendants that were named in those prior suits, *res judicata* also precludes the instant *in forma pauperis* suit against NIFA. If NIFA did, in fact, approve the contract between Nassau County and Armour that was in place in 2016, that would be sufficient to establish that NIFA was in privity with Nassau County (and possibly also with Armour as well) such that *res judicata* would apply to the instant suit against NIFA, requiring dismissal.[7] See

---

[7] There may also be other aspects of the relationship between Nassau County and NIFA that would establish privity. It is, however, unnecessary to explore that issue further here.

Cieszkowska, 295 F.3d at 205 (applying *res judicata* to dismissals under § 1915(e)). Thus, even if NIFA were not entitled to sovereign immunity and NIFA did approve the Armour contract that was in place in 2016, Plaintiffs' claim against NIFA would still be subject to dismissal based on *res judicata*.

**D.     Leave to Amend**

*Pro se* plaintiffs are ordinarily given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Shomo v. City of New York, 579 F.3d 176, 183 (2d Cir. 2009). However, "'leave to amend a complaint may be denied when amendment would be futile.'" Byng v. Delta Recovery Servs. LLC, 568 F. App'x 65, 66 (2d Cir. 2014) (quoting Tocker v. Philip Morris Cos., 470 F.3d 481, 491 (2d Cir. 2006)).

Here, the Court has carefully considered whether plaintiff should be granted leave to amend his complaint. Because the deficiencies in the complaint set forth above cannot be cured in an amended complaint, any amendment would be futile. Accordingly, leave to file an amended complaint is denied.

## III. CONCLUSION

For the forgoing reasons, Plaintiff's application to proceed *in forma pauperis* is granted, but the complaint is *sua sponte* dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to close this case and to mail a copy of this Order to Plaintiff.

**SO ORDERED.**

Dated: September 30, 2019
Central Islip, New York

                                                /s/ (JMA)
                                                JOAN M. AZRACK
                                                UNITED STATES DISTRICT JUDGE